GENOVESE, Judge.
Lin this personal injury case stemming from an automobile accident, Plaintiff, Lu-cie C. Ford, appeals the trial court’s award of general damages. For the following reasons, we affirm as amended.

FACTS AND PROCEDURAL HISTORY

On January 7, 2010, a collision occurred in Alexandria, Louisiana, when Ms. Ford, while stopped at a red light, was hit from behind by Audrey E. Tatum. Ms. Ford filed suit against Mr. Tatum, his employer, Vital Oil Well Services, LLC, and its automobile insurer, Bituminous Casualty Corporation,[1] (collectively Mr. Tatum) for the injuries she claimed resulted from the accident. Prior to trial, the parties stipulated that Mr. Tatum, while acting in the course and scope of his employment, was solely at fault in causing the accident. Accordingly, the matter proceeded to trial by jury on the issue of damages only.
The jury returned a verdict awarding Ms. Ford $45,000.00 for past and future medical expenses, $10,000.00 for past and future physical pain and suffering, $2,000.00 for past and future mental pain and suffering, $8,400.00 for past lost wages, $0.00 for future lost wages, and $5,000.00 for loss of enjoyment of life. A judgment was signed in accordance with the jury verdict on September 10, 2012. Ms. Ford appeals.

ASSIGNMENTS OF ERROR

On appeal, Ms. Ford presents the following assignments of error for our review:
J*
The jury in this matter abused its discretion in awarding [Ms. Ford] only $10,000.00 for past and future pain and suffering.
II.
*1255 The jury in this matter abused its discretion in awarding [Ms. Ford] only $2,000.00 for past and future mental pain and suffering.
III.
The jury in this, matter abused its discretion in awarding [Ms. Ford] only $5,000.00 for loss of enjoyment of life.

LAW AND DISCUSSION

This court, in Stelly v. Zurich American Insurance Co., 11-1144, pp. 3-4 (La.App. 3 Cir. 2/1/12), 83 So.3d 1225, 1228, summarized the standard of review applicable to this case as follows:
The Louisiana Supreme Court articulated the standard of review for general damage awards in Duncan v. Kansas City Southern Railway Co., 00-66 (La.10/30/00), 773 So.2d 670, cert. denied, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001), as follows:
General damages are those which may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260. As we explained in Youn:
Reasonable persons frequently disagree about the measure of general | ^damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.
Id. at 1261.
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Duncan, 773 So.2d at 682-83.
Ms. Ford began treating with Dr. Robert Rush on January 12, 2010 (five days after her accident). Dr. Rush diagnosed her injuries as cervical and lumbar strain, sacroiliac strain, left knee trauma, and post-concussion syndrome with headaches. Her treatment with Dr. Rush continued through May 7, 2010. According to Dr. Rush, on her last visit, Ms. Ford’s lower back and hip complaints had resolved, and *1256 her neck, sacroiliac strain, and knee were doing well.
On January 20, 2010, Ms. Ford also began treating with Dr. Maurice Gremil-lion. Dr. Gremillion was of the opinion that “she has some sciatica on the left and multiple musculoskeletal contusions and questionable cerebral concussion” as well as low back pain. An MRI, performed on January 22, 2010, revealed bulging discs at L5-S1. Ms. Ford continued to treat with Dr. Gremillion through April 30, 2010, at which time she still exhibited low back pain. Dr. Gremillion released her to return to work on May 10, 2010. His records reflect that he ordered Ms. Ford additional medication on August 6, 2010, due to | continuing complaints of pain. Ms. Ford returned to his office on September 1, 2010, still complaining of lower back pain and related that she was having difficulty walking. In October and November of 2010, Dr. Gremillion again ordered additional pain medication for Ms. Ford. At her last visit on January 28, 2011, Ms. Ford was still complaining of low back pain to Dr. Gremillion.
Ms. Ford underwent physical therapy with Jennifer Watts at Natchez Rehab & Sports Specialists from February 4, 2010, through April 14, 2010. On her last visit, she advised Ms. Watts that she was feeling much better, and she was discharged from therapy.
On December 29, 2010, Ms. Ford went to see Dr. Patrick Juneau. Her primary complaint to Dr. Juneau was “low back pain and some occasional radiating pain down into the left leg.” According to Dr. Juneau, “[s]he also had some tenderness over [her] left knee joint.” Ms. Ford also related the occurrence of daily headaches, which Dr. Juneau diagnosed as post-con-cussional headaches resulting from the accident. At Dr. Juneau’s recommendation, Ms. Ford received three lumbar epidural steroid injections before returning to see him on May 20, 2011. Due to Ms. Ford’s continuing complaints of lumbar pain, Dr. Juneau ordered a diskogram. Based upon the results of the diskogram, Dr. Juneau concluded that Ms. Ford had suffered a myofascial injury to her low back which did not require surgical intervention. On her subsequent visit on October 24, 2011, she had continuing complaints of pain. Because Ms. Ford’s lumbar complaints had not resolved by her final visit on July 11, 2012, Dr. Juneau opined that “she had a chronic myofascial injury in the low back.”[2] He discharged Ms. Ford on that date.
|BPr. Juneau referred Ms. Ford to Dr. Malcolm Stubbs for evaluation of her knee pain. She first saw Dr. Stubbs on February 21, 2011. Dr. Stubbs noted fluid on her knee, crepitus,[3] swelling, pain, and tenderness. An MRI of her left knee performed on March 21, 2011, revealed “a small amount of fluid in the knee and some prepatellar bursitis or swelling or edema[J” Ms. Ford’s second and final visit to Dr. Stubbs was April 21, 2011.
Ms. Ford testified about the nature of her injuries and the effect they had on her. With regards to her back, she explained, “[M]y back is just killing me. It — it doesn’t hurt every day[,] and it may go a week or two without hurting. But then, *1257 when it hurts, it hurts.” She testified that when her back is hurting, she is unable to do activities with her children. Additionally, for a period of time, Ms. Ford was traveling nearly two hours to work, then two hours home, which exacerbated her back pain. She testified that she often slept with a TENS unit and that the epidural injections provided limited relief. Ms. Ford also testified that prior to this accident, her mother, who had suffered a stroke and had resultant paralysis, lived with her. Ms. Ford was her caregiver. However, after the accident, because Ms. Ford was unable to take care of her mother, she had to be placed in a retirement home.
Ms. Ford contends that the jury’s award of $17,000.00 in general damages was abusively low. We agree. Notably, the jury awarded Ms. Ford the entirety of the medical expenses she incurred, totaling $45,000.00, which included expenses incurred for medical treatment continuing through July 11, 2012. Thus, the jury felt that Ms. Ford was entitled to recover for medical expenses for her treatment totaling approximately thirty months; however, this award for medical expenses is wholly inconsistent with the general damage award.
| (¡Mr. Tatum strenuously argues that the medical records reflect that Ms. Ford’s injuries had fully resolved after four months. He states, in brief, “the jury was faced with three (3) separate medical specialists, all of whom testified that the injuries Ms. Ford sustained in the accident were completely resolved, that she was pain free[,] and/or that she was fully capable of returning to work without restriction within four (4) months after the accident.” Mr. Tatum also argues that Ms. Ford’s credibility, vel non, was a significant factor in the result reached. Thus, it is his contention that the amount of the general damages awarded for four months is not an abuse of discretion. However, neither the medical records nor the testimony of Ms. Ford evidence a complete resolution of all of her complaints of pain without recurrence within that time frame. The testimony of Dr. Juneau explains the waxing and waning of pain that can be expected as well as the chronic nature of Ms. Ford’s condition, which can only be determined after the passage of time.
Dr. Juneau was questioned as to Mr. Tatum’s assertions that Ms. Ford’s symptoms had resolved after four months as reflected by Dr. Rush’s records and the physical therapy records. In response, Dr. Juneau contrasted the implication that those records indicate that Ms. Ford’s symptoms had totally resolved with what Ms. Juneau conveyed to him. Dr. Juneau explained that “she doesn’t necessarily have pain all the time.” In fact, “it’s common to have these fluctuating times of good periods and bad periods.” In Dr. Juneau’s opinion, “that’s what accounts for her — -her chronic — the chronic nature of her symptoms.”
On the issue of Ms. Ford’s credibility, we acknowledge that she was not completely forthcoming about her prior complaints. However, the injuries alleged by Ms. Ford to have resulted from the subject accident are fully corroborated by |7the medical testimony, and the jury accepted this evidence as establishing the causal connection between the accident and her alleged injuries.
Additionally, this court remains mindful of the standard of review to be employed in this case. Mr. Tatum argues that this case presented two permissible views of the evidence. “On the one hand, the jury could have reasonably concluded that Ms. Ford sustained straining type injuries to her neck, low back[,] and left knee which resolved completely within four (4) months *1258 after the accident.” Yet, “[o]n the other hand[,] the jury could have concluded (as Ms. Ford argues) that she sustained a ‘chronic myofascial back injury’ lasting for a duration of thirty (30) months.” Mr. Tatum concludes that “obviously, the jury reached the former conclusion” which mandates an affirmation by this court. We disagree.
Had the jury accepted Mr. Tatum’s argument that the necessary medical treatment for Ms. Ford’s injuries ended May 7, 2010, i.e., after four months, and, consequently, awarded her medical expenses limited to that time frame, then such a factual determination would have been consistent with the jury’s general damage award — but that is not what the jury did. The jury awarded Ms. Ford past and future medical expenses in the amount of $45,000.00, which is considerably more than simply four months of medical treatment and more in line with an approximate thirty-month injury. The jury award of $45,000.00 for past and future medical expenses is wholly inconsistent with, and significantly outweighs, the aggregate $17,000.00 general damage award being appealed. Therefore, we find the general damage award constitutes an abuse of discretion. Thus, we must look to prior awards for the purpose of determining the lowest reasonable award. See Coco, 341 So.2d 332.
Based upon the foregoing, and considering the nature and extent of Ms. Ford’s injuries, as well as the length of her medical treatment and her 18compIaints continuing to the date of trial, we find that the jury’s award of $17,000.00 is abusively low. Considering the facts in this case, and noting the jury’s award of $45,000.00 in past and future medical expenses, we find that the lowest amount that could have reasonably been awarded for general damages is $50,000.00. See Stelly, 83 So.3d 1225. Accordingly, we hereby amend the aggregate general damage award and increase it from $17,000.00 to $50,000.00.

DECREE

For the reasons assigned, we affirm the jury’s award of general damages to Lucie C. Ford, but we amend same to increase this award from $17,000.00 to $50,000.00. The costs of this appeal are assessed to Audrey E. Tatum, Vital Oil Well Services, LLC, and Bituminous Casualty Corporation.
AFFIRMED AS AMENDED.
CONERY, J., concurs in part, dissents in part, and assigns reasons.

. Ms. Ford formally named Bituminous Insurance Company as a Defendant; however, its answer reflects the proper name of the insurer to be Bituminous Casualty Corporation.

. Dr. Juneau explained in his deposition that Dr. Rush's diagnosis of a lumbar strain reached in 2010 is different terminology for the same injury. However, "you really have to play that out over time to confirm that diagnosis.” It becomes “chronic” in nature if the symptoms persist "[bjeyond a year.”

. Dr. Stubbs testified that ”[c]repitus is a palpable sensation of grinding[.]” He explained that when he places his hand on such a knee he can "feel some crunching or grinding sensation!.]”