STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


13-577


DANIELLE BROOKE THIBODEAUX, ET AL.

VERSUS

ACE AMERICAN INSURANCE COMPANY, ET AL.



**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 112925-F
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


**AFFIRMED, AS AMENDED.**


**Thibodeaux, Chief Judge, concurs in part, dissents in part and assigns written reasons.**

**Mark Reese Pharr, III**
**Lindsay L. Meador**
**Galloway, Johnson, et al**
**328 Settlers Trace Blvd.**
**Lafayette, LA 70508**
**(337) 735-1760**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Ace American Insurance Company**
 **PSC Industrial Outsourcing, Inc.**
 **Sean M. Bohannon**

**Blake R. David**
**Broussard & David, L.L.C.**
**P. O. Box 3524**
**Lafayette, LA 70502-3524**
**(337) 233-2323**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
 **Myka Hatch**
 **Danielle Brooke Thibodeaux Hatch**

**SAUNDERS, Judge.**

This is an automobile accident case involving a left-turning vehicle striking a passing vehicle established in the passing lane on a two-lane roadway. The jury allocated 53% of the fault to the driver of the passing vehicle and 47% of the fault to the driver of the left-turning vehicle and awarded damages accordingly.

We find the allocation of fault by the jury was erroneous when considering the record before us and the applicable statutes: La.R.S. 32:104, La.R.S. 32:73, and La.R.S. 32:75. We amend the jury's judgment to allocate 100% of the fault to the driver of the left-turning vehicle. We affirm the remaining aspects of the jury's judgment.

## FACTS AND PROCEDURAL HISTORY:

On August 28, 2008, Danielle Brooke Thibodeaux Hatch (Hatch) (Hatch was married during the pendency of this case) was driving south on La. Highway 333 near its intersection with La. Highway 82 in a 2003 GMC model 1500 pick-up truck. As she proceeded southbound, Hatch approached, from the rear, a Ford F350 truck attached to a gooseneck, flatbed trailer driven by Sean Bohannon (Bohannon). Passengers in the Ford F350 were then co-employees of Bohannon, Jarvin Flagg and Davon Dugas. Bohannon was driving while in the course and scope of his employment with PSC Industrial Outsourcing, Inc. (PSC). As Hatch attempted to pass the Ford F350, Bohannon attempted to make a left turn onto a private driveway. A collision occurred.

On October 3, 2008, Hatch filed a petition for damages on behalf of herself and her minor daughter, Myka Hatch (Hatch and Myka Hatch collectively referred to Plaintiffs), seeking medical expenses and damages for pain and suffering, loss of income, loss of earning capacity, and loss of enjoyment of life. Plaintiffs' petition named as defendants Bohannon, PSC, and Ace American Insurance Company

(Ace) as the insurer of the Ford F350 driven by Bohannon (Bohannon, PSC, and Ace collectively referred to as Defendants).

Plaintiffs alleged that Bohannon failed to make a lawful left turn, failed to keep a proper lookout for the vehicles passing lawfully on the left, failed to yield the right of way, failed to discharge a duty to a person in the capacity of Hatch, and any and all other acts of negligence and/or fault which may have been revealed at or before the trial of this matter.

On June 25, 2012, a jury trial to determine liability commenced. According to the testimonies adduced at this trial, Bohannon was driving his company's white F350 truck and towing a utility trailer down Intracoastal Highway in Vermilion Parish, Louisiana. The trailer on the back of the truck was filled with equipment, completely obstructing his view through the rear view mirror. Hatch was also driving down the two-lane Intracoastal Highway with her two-month-old daughter on their way to pick up her then fiancé.

During the drive, Bohannon attempted to make a left turn into a private driveway. Bohannon stated that he had seen Hatch driving behind him on the Intracoastal Highway just before the turn, but he failed to see that she was in the process of passing him. Bohannon testified that, from the time he slowed to make the left turn until the impact, he never saw Hatch until the collision.

Bohannon stated in his deposition that Hatch must have been in his blind spot when he checked his side mirrors prior to attempting to make the left turn. Bohannon clarified at trial that the blind spot he was referencing was behind the trailer, as he could not see behind the trailer because of the items being carried on the trailer and large tool box.

2

The physical evidence at the scene indicated that Hatch had already established position in the passing lane before Bohannon attempted to make the left turn. Upon making the left turn at the private driveway, the front of Bohannon's F350 struck the front passenger-side fender and wheel of the pick-up driven by Hatch.

Louisiana State Trooper Dexter Bourque, an eighteen-year veteran trooper and certified accident reconstructionist for ten years with the Louisiana State Police, testified that based on all the evidence he could ascertain, it was clear that Hatch had control of the passing lane before Bohannon began his left turn into a private driveway. Trooper Bourque opined that Bohannon's actions were the primary factor to the accident and testified that he cited Bohannon for failure to yield.

Defendants called no witnesses to allege that Hatch was not in control of the passing lane before Bohannon began to execute his left turn into a private driveway. Further, Defendants called no witnesses to allege that Hatch was at fault in any way.

After hearing all of the above testimony, the jury allocated 47% of the fault to Defendants and 53% of the fault to Hatch. Thereafter, a damages trial commenced.

At the damages trial, Plaintiffs introduced voluminous evidence of Hatch's injuries and losses that she alleged were suffered as a result of this accident. In all, six of Hatch's treating physicians testified. Since the accident, according to the evidence submitted by Hatch, she incurred $164,796.81 in medical expenses, two surgeries, and approximately 100 medical treatment visits.

While the jury heard the testimony of Hatch's treating physicians, it also heard the testimony of Defendants' orthopedic expert, Dr. Douglas Bernard. He testified that all of Hatch's diagnostic tests following the subject accident were read as normal, including an MRI taken in January of 2009, a second MRI taken in June of 2010, a myelogram taken in October of 2010, a CT scan taken in October of 2010, and a third MRI taken in February 2012. Testimony reflected that all of the independent radiologists who read this same film indicated that there were no abnormalities. Further, the discogram performed by Dr. Steven Staires was negative, failing to recreate the pain that Hatch complained existed.

Dr. Bernard opined that Hatch may have suffered soft tissue injuries in her neck following this accident, but nothing more. He did not see any indication for the cervical surgery or for the continued diagnostic testing. Concerning her alleged carpal tunnel syndrome, Defendants' expert neurologist, Dr. Rex Houser, testified that Hatch's diagnostic testing and subjective complaints were consistent with cubital tunnel syndrome, not carpal tunnel syndrome. Cubital tunnel syndrome is caused by compressing a nerve in the elbow by leaning on it while driving or working. Therefore, Dr. Houser opined that the left carpal tunnel release performed by Dr. Blanda was also unnecessary.

Additionally, Dr. Houser testified that he did not believe that Hatch suffered from seizures as a result of the accident, noting that she may not suffer from seizures at all. Given Hatch's descriptions of her incidents with dealing with this issue, Dr. Houser believed she was likely suffering from fainting episodes which were not caused by this accident. He further indicated that Hatch underwent three EEG studies, all of which were read as normal.

4

Dr. Houser's opinion was supported by the records of Dr. Diana Fernandez, who evaluated Hatch for seizures immediately following the accident. Dr. Fernandez opined that Hatch's symptoms were likely related to anxiety and panic and possibly syncope (fainting).

Defense expert psychiatrist, Dr. Rennie Culver, also testified that he agreed with Dr. Houser's finding that Hatch had pre-existing anxiety. Further, Dr. Culver found that Hatch did not fit the criteria for Post-Traumatic Stress Syndrome. Finally, Dr. Bernard testified that, in his view, Hatch suffered a non-surgical soft tissue injury.

After hours of deliberation, a jury awarded Hatch the following:

A. Past Medical Expenses $40,000.00

B. Future Medical Expenses $10,000.00

C. Past Loss of Earnings $6,000.00

D. Future Loss of Earnings or Impairment of Earning Capacity $0.00

E. Past Physical and Mental Pain and Suffering $40,000.00

F. Future Physical and Mental Pain and Suffering $7,000.00

G. Loss of Enjoyment of Life, Past and Future $15,000.00

TOTAL: $118,000.00

Plaintiffs filed a motion for judgment notwithstanding the verdict and a motion for new trial, both of which were denied. Plaintiffs now appeal the liability and damages verdict of the jury alleging four assignments of error.

## ASSIGNMENTS OF ERROR:

1. The jury committed legal error in determining liability by misapplying Louisiana law to these facts and finding Brooke Hatch 53% at fault in the accident. Alternatively, the jury verdict was an abuse of its discretion, clearly wrong, manifestly erroneous and devoid of reason.

2.    The jury committed legal error in determining amount of past and future damages:  the jury found that Brooke Hatch's injuries lasted for four years and will continue into the future, but failed to award the damages proved at trial; the quantum awarded in compensatory damages was so inconsistent and contrary to the evidence as to constitute legal error and must be increased.  Alternatively, the jury verdict was an abuse of its discretion, manifestly erroneous, clearly wrong, and devoid of reason.

3.    The jury committed legal error in failing to follow this [c]ourt's instruction relative to uncontradicted and treating [e]xpert [t]estimony.

4.    The jury committed legal error in failing to follow this [c]ourt's instruction relative to the *Housley* presumption.

## ASSIGNMENT OF ERROR NUMBER ONE:

In their first assignment of error, Plaintiffs contend that the jury committed legal error in determining liability by misapplying Louisiana law to these facts and finding Hatch 53% at fault in the accident.  We find merit to this assignment of error.

The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La. 10/30/00), 773 So.2d 670, 680-81, stated that the standard of review applicable to comparative fault determinations is as follows:

> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96); 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id*.

As such, it is clear that a fact finder's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).  The findings of fact made by a jury will not be disturbed unless they are manifestly erroneous or clearly wrong. *Id.*

6

"Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

The factors to consider in an appellate review of an allocation of fault were addressed by the Louisiana Supreme Court in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967 (La.1985). Therein, the supreme court stated:

> [V]arious factors may influence the degree of fault assigned, including: (1)whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Id.* at 974.

These factors are also relevant to an appellate court's determination when ascertaining the highest or lowest percentage of fault that could reasonably be assessable to the respective parties. *Clement*, 666 So.2d 607. This court, in applying *Clement*, stated:

> [T]he allocation of fault is not an exact science, nor is it the search for a precise ratio. Rather, much like that of quantum assessment, allocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot violate the manifest error standard of review. When we look to the applicable laws and standard of review, this court is to make a determination of whether any reasonable person could have made the allocation of fault that the jury made under the facts of this case.

*Layssard v. State, Dep't of Pub. Safety and Corrs.*, 07-78, p. 4 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, 1058, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511.

The duty of a left turning vehicle is governed by La.R.S. 32:104. Louisiana Revised Statutes 32:104(A), applicable to this case, states:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

The duty of a vehicle passing on the left is governed by La.R.S. 32:73 and La.R.S. 32:75. Louisiana Revised Statutes 32:73(1) states, in pertinent part, that, "the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Louisiana Revised Statutes 32:75 states:

> No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.

This court, in *Kilpatrick v. Alliance Casualty Reinsurance Co.*, 95-14, pp. 4-5 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406, interpreted and applied the applicable law as follows:

> Louisiana jurisprudence holds that the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. *Neal v. Highlands Ins. Co.*, 610 So.2d 177 (La.App. 3 Cir.1992), *writ denied*, 612 So.2d 100 (La.1993).

8

The law sets forth the duties imposed on a left-turning driver as well as a passing driver. The duties imposed upon a left-turning motorist are found in La.R.S. 32:104. Under this statute, [the left-turning driver is] required to give a signal of his intent to make a left turn at least 100 feet before reaching [the road in which he intends to travel after making the left turn]. In addition to giving the proper signal, [the left-turning driver is] required to make a proper observation that the turn could be made without endangering a passing vehicle. *Bamburg v. Nelson*, 313 So.2d 872 (La.App. 2 Cir.), *writ denied*, 318 So.2d 57 (La.1975). The onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, . . . is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. *Husser v. Bogalusa Coca Cola Bottling Co.*, 215 So.2d 921 (La.App. 1 Cir.1968).

Finally, in a vehicular collision case, the plaintiff [attempting to pass the left-turning vehicle] may take advantage of a presumption of the defendant's negligence when the plaintiff proves the defendant executed a left-hand turn and crossed the center line at the time of impact. *Thomas v. Champion Ins. Co.*, 603 So.2d 765 (La.App. 3 Cir.1992). Accordingly, the burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and show he is free of negligence. *Miller v. Leonard*, 588 So.2d 79 (La.1991).

The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 32:75. Based on these statutes, the jurisprudence holds that the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway. *Burns v. Evans Cooperage Co.*, 208 La. 406, 23 So.2d 165 (1945). More particularly, the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. *Palmieri v. Frierson*, 288 So.2d 620 (La.1974).

In the case before us, the jury found Hatch 53% at fault for the accident and Bohannon 47% percent at fault. After a thorough review of the record, we find no evidence to support a finding that Hatch had any fault in the accident.

Trooper Bourque testified that, prior to the accident, Hatch was attempting a passing maneuver in a legal passing zone. Further, Trooper Bourque testified that Hatch had control of the passing lane and that she was not speeding. Finally,

9

according to Trooper Bourque, Bohannon should have been able to see Hatch prior to attempting to make his left turn, and he issued a citation to Bohannon.

Hatch testified that neither the brake lights nor the turn signal were illuminated by the Bohannon vehicle at the point in time that she could or should have seen them. Bohannon testified that his trailer's lights were working properly and that he did illuminate his signal light. Trooper Bourque corroborated that the trailer lights were functional, and the passengers in the Bohannon vehicle corroborated that Bohannon did have the turn signal illuminated prior to attempting to make the left turn.

Defendants rely heavily on this assertion regarding an illuminated signal light. However, there is no evidence at what point in time that Bohannon illuminated his signal light. Contrarily, it is clearly indicated by the testimonies of Trooper Bourque and Hatch that she had legally established herself in the passing lane prior to impact. Once Hatch was established in the passing lane, she was entitled to complete her legal maneuver, and whether Bohannon's signal was illuminated is irrelevant. Under the circumstances presented in this case and the complete lack of evidence as to when Bohannon may have illuminated his signal light, we find no reasonable basis to attribute any fault to Hatch.

Moreover, while Bohannon testified that he checked his mirrors twice before making his left turn, he also stated the following:

Q     So you're saying your side mirror could see all the way down that oncoming lane backwards, right?

A     Yes, sir.
Q     But then you made this turn and you never saw her until she actually impacted your vehicle?

A     Yes, sir.

10

Q     But [if] you could see the entire lane[,] how couldn't you see her before she hit your vehicle?

A     Whenever you're making a turn you're looking at where you're turning to. You're not going to be looking at the lane that the traffic would passing you on.

After reviewing the testimonies in the record thoroughly, we find that the record is completely devoid of any evidence that Hatch had any fault in this accident. Given the heightened duty placed upon a left turning vehicle under La.R.S. 32:104, we find that the only reasonable allocation of fault under the circumstances present in this case is that Bohannon was 100% at fault for the accident. Accordingly, we amend the jury verdict to allocate 100% of the fault to Bohannon.

## ASSIGNMENT OF ERROR NUMBER TWO:

Plaintiffs assert in their second assignment of error that the jury committed error in determining the amount of past and future damages. We do not agree.

> [T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
>
> . . . The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994) (citations omitted). Additionally, the applicable standard of reviewing special damages is that of manifest error.

11

*McDaniel v. Carencro Lions Club*, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945, *writ denied*, 06-1998 (La. 11/3/06), 940 So.2d 671.

The jury heard the testimony of Hatch's treating physicians as well as the Defendants' experts. Dr. Bernard testified that all of the diagnostic testing performed on Hatch over three and a half years after the accident were normal. He testified that while it is possible that Hatch suffered a soft tissue injury from this accident, it was unnecessary for her to undergo most of the diagnostic testing, and unnecessary for her to undergo the single level cervical fusion based on his physical examination of her, her medical records, and her diagnostic films. Further, Dr. Houser testified that the carpal tunnel surgery was unnecessary based on his physical examination and review of Hatch's medical records.

The jury was presented with this information, along with the Hatch's own testimony of the activities she continued to engage in, such as getting married, giving birth to a child, dancing, socializing, tubing on the river, riding in Mardi Gras parades, undergoing elective cosmetic surgery, consuming alcoholic beverages, and riding on boats.

Plaintiffs urge that the jury's findings were clearly wrong based on assumptions of what arguments the jury accepted. There is no way for this court to determine what arguments the jury accepted or rejected.

Additionally, despite Plaintiffs' contentions, the jury is not obligated to make a choice between an amount of damages suggested by either side of the litigation. We find no abuse of the "much discretion" afforded to the jury, nor do we find any manifest error by the jury. *Youn*, 623 So.2d at 1260. As such, we find this assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Next, Plaintiffs contend that the jury committed legal error in failing to heed instruction relative to uncontradicted and treating expert testimony. This contention lacks merit.

"Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part." *Green v. K-Mart Corp.*, 03-2495, p. 5 (La. 5/25/04), 874 So.2d 838, 843 (citations omitted).

Plaintiffs' argue that the opinions of their experts, Randy Rice and Glenn Hebert, for future medical expenses are uncontradicted, thus, the jury must award Hatch for these future medical expenses. This argument is not correct.

In assignment of error number two, we upheld the jury's damage awards. In doing so, we pointed out that there was ample evidence in the record to find that Hatch needed no future medical treatment for injuries sustained to her neck or left wrist. Additionally, Dr. Houser opined that Hatch's anxiety episodes were not related to the subject accident, and Dr. Culver agreed with Dr. Houser and testified that Hatch's panic disorder pre-existed the subject accident.

Thus, the evidence presented to the jury supports a finding that Hatch's psychological counseling with Dr. LeCorgne, neurological treatment for seizures with Dr. Karim, and medications for her psychological needs and neurological needs are not compensable damages caused by this accident. The jury could have found that Hatch's anxiety had been exacerbated by this accident, and, therefore, awarded a smaller than requested monetary award for future medication or treatment.

13

Rice, an economist, and Hebert, a vocational rehabilitation expert, relied upon the recommendations of Hatch's treating physicians to calculate their numbers. If the jury reasonably rejected the view that all of the injuries complained of by Hatch were related to the accident, it can reject the damages proposed by Rice and Hebert. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In their final assignment of error, Plaintiffs assert that the jury committed legal error in failing to follow instruction relative to the *Housley* presumption. This assertion is misguided.

In *Housley v. Cerise*, 579 So.2d 973, 980 (La.1991) (quoting *Lukas v. Insurance Co. of North America*, 342 So.2d 591 (La.1977)), the supreme court determined:

> [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

Plaintiffs base this assignment of error on their contention that Hatch met the requirements under *Housely*, and, as such, she is entitled to recover any and all damages that she or her treating physicians aver are related to the accident. This is not how the *Housely* presumption operates.

The *Housley* presumption addresses causation. It does not mandate that if a jury believes an accident has caused an injury, it must also award all medical expenses and all damages that any treating physician asserts is related to that injury. Once a jury has evaluated the credibility of the expert testimony and all evidence

14

presented, it is free to quantify damages as it deems appropriate. Causation of damages and quantification of damages are two different concepts. The *Housley* presumption only addresses causation.

While all of the evidence presented indicates that Hatch was injured as a result of this accident, there was sufficient evidence that Hatch was not injured to the extent she claimed and, therefore, did not require that the jury award her for all of the treatment and damages she sought. Accordingly, we find no merit to this assignment of error.

## CONCLUSION:

Plaintiffs, Danielle Brooke Thibodeaux Hatch and Myra Hatch, raised four assignments of error. We find merit in the first, that the jury's allocation of fault was in error. As such, we amend the trial court's judgment to reflect that Sean Bohannon is 100% at fault for the accident. We find no merit to the remaining assignments of error raised. All costs of these proceedings are to be divided evenly between the parties.

**AFFIRMED, AS AMENDED.**

DANIELLE BROOKE THIBODEAUX, ET AL

VERSUS

ACE AMERICAN INSURANCE COMPANY, ET AL


**THIBODEAUX, Chief Judge, Concurring In Part & Dissenting In Part.**

While I concur with the majority on the apportionment of fault, I disagree with its assessment of damages.

Curiously, the majority focuses the greater part of its analysis on the testimony of the defendants' physicians, all of whom were hired for litigation purposes, not for medical treatment. The third circuit has explained that "[i]t is well settled that the testimony of an attending physician should be accorded more weight and probative value than that of a physician who has made an examination solely for the purpose of giving expert testimony regarding a patient's condition." *Streeter v. Sears, Roebuck and Co., Inc.*, 533 So.2d 54, 70 (La.1988), *writ denied*, 536 So.2d 1255 (La.1989) (citations omitted).

The accident occurred on August 28, 2008. The defendants' physicians upon whom the majority relies did not examine Ms. Hatch until thirty months post-accident. One of those physicians, Dr. Culver, has been the subject of less than complimentary comments in *Fontenot v. Wal-Mart*, 08-158 (La.App 3 Cir. 3/4/09), 5 So.3d 298, *writ denied*, 09-0770 (La. 5/29/09), 9 So.3d 165. Despite Dr. Bernard's assertion of a soft-tissue injury lasting for five to

1

six months and resolving by January 2009, Ms. Hatch was treated by her neurosurgeon at least six times in 2009.

Dr. Wael Karim, Ms. Hatch's neurologist, confirmed her injury utilizing pin-prick sensation in the cervical C5-C6 area. This injury manifested itself through at least 2011. Dr. Steven Staires confirmed a disc tear at C5-C6 in January 2011, two years after Dr. Bernard speculated that Ms. Hatch should have recovered.

All six of Ms. Hatch's treating physicians confirmed and testified regarding her objective injuries. All related her injuries to the accident. The defendants presented no evidence of a superseding or intervening cause; indeed none existed.

The jury obviously placed little weight or gave no credence to the defendants' assertion of a minimal soft-tissue injury. It awarded $10,000.00 in future medicals, thus indicating some need for future medical intervention. Yet it failed to award her documented past medical expenses of $164,796.81. This was manifest error. The past medical expenses in the amount requested should have been awarded.

Given the greater degree of weight that should rightfully be accorded to physicians who actively treated Ms. Hatch, the jury was manifestly erroneous as well in its award of general damages. I would amend the judgment and award $150,000.00 in past physical and mental pain and suffering; $50,000.00 in future physical and mental pain and suffering; and $30,000.00 in loss of enjoyment of life.

For the foregoing reasons, I respectfully dissent in part.

2