STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1180

TAYLOR ADAM BURTNER

VERSUS

LAFAYETTE PARISH CONSOLIDATED GOVERNMENT, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2010-7783
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion and David Kent Savoie, Judges.

**REVERSED IN PART, AFFIRMED IN PART, AS AMENDED.**

Ralph E. Kraft
F. Douglas Gatz, Jr.
Bryan E. Lege
Kraft Gatz LLC
600 Jefferson Street, Suite 410
Lafayette, LA 70501
(337) 706-1818
**ATTORNEY FOR PLAINTIFF/APPELLANT**
    Taylor Adam Burtner

Bryan D. Scofield
Scofield & Rivera, L.L.C.
100 E. Vermilion, Suite 301
Lafayette, LA 70502
(337) 235-5353
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    Lafayette Parish Consolidated Government and Michael Anthony Milazzo

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This is an automobile accident case that occurred in Lafayette, Louisiana at 1:15 a.m. on July 22, 2010. The Plaintiff, Taylor Burtner, was driving his 2006 Ford Escape and came to a stop sign on Jomela Drive at its intersection with West Pinhook Road. At that point, West Pinhook has two lanes of travel in each direction, and there is no stop sign for vehicles traveling on West Pinhook at the intersection with Jomela Drive. West Pinhook curves just prior to its intersection with Jomela Drive. Mr. Burtner attempted to turn left from Jomela Drive onto West Pinhook, when he was struck by a police vehicle driven by Michael Milazzo, a Lafayette City Police Officer.

Mr. Burtner suffered injuries as a result of the accident, including a complex tibia and fibula fracture of the right leg, requiring three separate surgeries. Suit was filed against Officer Milazzo and his employer, Lafayette Parish Consolidated Government.

The evidence revealed, earlier in the evening, Plaintiff had visited the Tilted Kilt restaurant, where he drank two beers, before driving to the Frozen Sun Daiquiri Shop. Plaintiff admitted he also consumed two beers at the daiquiri shop. Plaintiff testified he refrained from drinking as much as the people he was with, because he was the "designated driver" that evening.

After leaving the daiquiri bar, Plaintiff drove to his apartment. One of his passengers, Jon Wilson, wanted to go home, but, according to Plaintiff, was too intoxicated to drive. Plaintiff drove Wilson home, and had another person, Harold Alpha, follow in Wilson's truck. After dropping Wilson off, Plaintiff and Alpha began driving back to Plaintiff's apartment.

On the way home after dropping off Wilson, Plaintiff came to the stop sign at Jomela Drive and West Pinhook. According to his testimony, Plaintiff looked to

2

his left and then to his right, and then again to his left. After not seeing any oncoming traffic he moved out onto West Pinhook to begin his left turn. The collision then occurred with the police vehicle driven by Officer Milazzo.

Officer Milazzo was traveling in excess of the posted speed limit on West Pinhook, which was forty miles per hour. How much above the speed limit his vehicle was traveling was contested at trial. There was no dispute that Officer Milazzo was not responding to any police-related emergency, but instead was traveling back to the police station to use the restroom. Plaintiff's expert in accident reconstruction, Kelley Adamson, concluded that Officer Milazzo was traveling between fifty-five and sixty miles per hour at impact. Mr. Adamson maintained that this excessive rate of speed, combined with the curve in the road, prevented Plaintiff from being able to see the police vehicle when he was at the stop sign.

However, Officer Milazzo presented evidence suggesting his vehicle was traveling just minimally above the speed limit, at no more than fifty miles per hour. The defense argued if Plaintiff had been paying more attention he would have seen Officer Milazzo's vehicle before proceeding onto West Pinhook.

According to the defense, Plaintiff was distracted at the time he attempted to turn left, because he noticed his guest passenger, Alpha, was texting when he was making the left turn. Plaintiff testified he observed Alpha was texting when he looked to his right, but then again looked to his left before beginning his left-turn maneuver.

Following the accident, Plaintiff was transported to Lafayette General Medical Center by Acadian Ambulance. A blood alcohol test was performed on Plaintiff at 2:20 a.m., approximately one hour after the accident occurred.[1] The

---

[1] The medical records established the blood sample from Plaintiff was purportedly drawn at 2:20 a.m. However, the records from Acadian Ambulance indicate Plaintiff did not arrive at the hospital until 2:34 a.m. Thus, there is an obvious conflict in these records which calls into question any reliance on Plaintiff's blood alcohol level.

test revealed Plaintiff had a blood alcohol level of 0.06, which is below the 0.08 legal limit for intoxication. Defendants later hired a pharmacologist and toxicologist, Dr. William George, who concluded at the time of the accident, Plaintiff would have had a blood alcohol level of between 0.069 and 0.073, still below the legal limit for intoxication. Despite the fact that Plaintiff was not "legally drunk," Dr. George testified that beginning at 0.050, a driver's reaction times and judgment are impaired. Thus, he testified Plaintiff was impaired at the time of the accident and this impairment affected his alertness, critical judgment, visual perception and complex reaction time in relation to operating a motor vehicle.

After trial on the merits, the trial court set forth oral reasons for judgment. The trial court noted that "extremely dangerous conditions" existed for anyone making a left turn from Jomela Drive onto West Pinhook. The trial court opined that because of these dangerous conditions the city should have placed a "no left turn" sign at the intersection. The trial court ultimately concluded both parties were at fault. The trial court found Officer Milazzo was at fault because he was operating his police vehicle in excess of the posted speed limit.

The trial court found Plaintiff also was at fault in causing the accident. It noted Plaintiff was entering a favored street from an unfavored street and making a left turn, which placed a high degree of responsibility on Plaintiff to safely negotiate the maneuver. The trial court found the consumption of alcohol by Plaintiff earlier that evening "altered his ability to observe things that were happening." The trial court also concluded Plaintiff was "distracted" when initiating the turning maneuver, citing testimony that Plaintiff "observe[d] Mr. Alpha was texting," and thus not exhibiting the "careful attention" required under the circumstances. The trial court then assessed ninety percent (90%) fault to Plaintiff and ten percent (10%) fault to Officer Milazzo.

4

In regards to damages, Plaintiff was awarded all medical damages claimed, $67,072.12. Plaintiff was also awarded $40,000.00 in general damages. Court costs were assessed in proportion to the apportionment of fault of the parties.

Plaintiff has appealed the judgment, contending the trial court manifestly erred in apportioning him with ninety percent (90%) of the fault and only assessing Officer Milazzo with ten percent (10%) fault. Plaintiff also asserts the trial court abused its discretion in only awarding $40,000.00 in general damages. Defendants answered the appeal and argued Officer Milazzo should not have been assessed with any fault. Defendants also contend the trial court erred in awarding certain medical expenses and court costs.

## ANALYSIS

### I. Liability.

Initially, we note the trial court specifically found both parties were at fault in causing the accident. We agree with this determination, finding there is no other conclusion but that both parties' conduct caused the accident. There was no dispute Officer Milazzo was speeding, and as he was not responding to any police-related call, his failure to abide by the posted speed limit was not excused by La.R.S. 32:24.[2] There also is no question Plaintiff's actions contributed to the accident in question. Thus, the question before us on the issue of liability is whether the trial court's apportionment of fault was erroneous.

We recently reviewed the standard applicable to the factfinder's apportionment of fault in *Thibodeaux v. Ace American Insurance Co.*, 13-577, pp. 6-8 (La.App. 3 Cir. 11/27/13), 127 So.3d 132, 136-37:

> The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La.10/30/00), 773 So.2d

---

[2] Louisiana Revised Statutes 32:24 allows for the "driver or rider of an emergency vehicle, when responding to an emergency call, or when in pursuit of an actual or suspected violator of the law" to "exceed the maximum speed limits so long as he does not endanger life or property." Even were this statute applicable herein, it could be argued that Officer Milazzo's speeding did in fact endanger life or property, but as he was not responding to any job relate call, La.R.S. 32:24 clearly does not apply.

670, 680-681, stated that the standard of review applicable to comparative fault determinations is as follows:

> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id*.

As such, it is clear that a fact finder's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). The findings of fact made by a jury will not be disturbed unless they are manifestly erroneous or clearly wrong. *Id*. "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been siting as the trier of fact, it would have weighed the evidence differently." *Id*. at 1112.

The factors to consider in an appellate review of an allocation of fault were addressed by the Louisiana Supreme Court in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967 (La.1985). Therein, the supreme court stated:

> [V]arious factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Id*. at 974.

Prior to articulating the foregoing standard, the supreme court in *Watson* noted that "appellate review of facts is not completed by reading so much of the

6

record as will reveal a reasonable factual basis for the finding in the trial court."
*Id.*, 469 So.2d at 972, citing *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978). It further held that proper review requires the appellate court to determine whether that finding, even if supported by evidence, was clearly wrong or manifestly erroneous. *Watson*, 469 So.2d at 972. The court further explained:

> It is not enough to sustain the determination of the district court when "there is some reasonable evidence to support the finding." Rather, the appropriate question is, was that finding clearly wrong or manifestly erroneous.

*Id.*

Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court's finding. The reviewing court must examine the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

The trial court set forth several reasons for finding Plaintiff at fault in causing the accident. A driver entering a favored highway is under a duty to proceed with extreme caution. *Toston v. Pardon*, 03-1747 (La.4/23/04), 874 So.2d 791. Louisiana law also recognizes that a left turn is a dangerous maneuver and a motorist is under a strict duty to ascertain whether it can be completed safely. *Theriot v. Lasseigne*, 93-2661 (La.07/05/94), 640 So.2d 1305. The left-turning motorist involved in an accident is burdened with a presumption of liability and must show that he was free from fault. *Slagel v. Roberson*, 37,791 (La.App. 2 Cir. 11/18/03), 858 So.2d 1288, *writ denied*, 03-3508 (La. 03/12/04), 869 So.2d 824; *Mack v. Wiley*, 07-2344 (La.App. 1 Cir. 05/02/08), 991 So.2d 479, *writ denied*, 08-1181 (La. 09/19/08), 992 So.2d 932. We agree with the trial court that Plaintiff was unable to overcome this presumption of liability.

7

The trial court found Plaintiff was distracted, and although Plaintiff testified he again looked to his left after noticing his guest passenger was texting, we must accept as reasonable the trial court's factual finding that Plaintiff was distracted. The trial court also found Plaintiff's alcohol consumption prior to the accident "altered his ability to observe things that were happening." Although the testing of Plaintiff's blood alcohol level was inconclusive, it was not disputed that Plaintiff consumed several beers that evening. Thus, Plaintiff's fault in causing the accident was clearly established.

However, our review of the record leads us to conclude assessing only ten percent (10%) fault to Officer Milazzo was clearly wrong and contrary to the evidence. Officer Milazzo's speed, even if accepted as less than that posited by Plaintiff's expert, created a dangerous situation. This danger was magnified by the fact it was nighttime and Officer Milazzo continued to speed even as he came to the nearly blind curve in the road before Jomela Drive. The trial court specifically noted the curve and sight obstruction created by trees in the area presented "extremely dangerous conditions." Defendants even noted that photographs introduced at trial established trees created a partial sight obstruction at the intersection of Jomela Drive and West Pinhook. They correctly note this obstruction should have heightened Plaintiff's duty to proceed with the utmost caution. We agree. Likewise, the obstruction created by the trees and the dangerous nature of the curve also should have heightened the need for Officer Milazzo to maintain a safe speed, particularly given his familiarity with the area. It was undisputed that if Officer Milazzo was doing the speed limit, his chance to slow his vehicle and avoid the collision would have greatly increased. It was manifestly erroneous to assess Officer Milazzo with only ten percent (10%) fault, particularly considering that he, too, could have avoided the accident had he simply obeyed the posted speed limit.

8

When an appellate court finds an apportionment of fault by the trial court clearly erroneous, it should raise or lower it to the highest or lowest point reasonably within the trial court's discretion. *Clement v. Frey*, 95-1119 (La.1/16/96), 666 So.2d 607. Based upon our review of the evidence, we conclude that the lowest percentage of fault on Officer Milazzo's part reasonably within the trial court's discretion was twenty-five percent (25%). We accordingly amend the trial court's judgment in part, as to the respective allocation of fault between Plaintiff and Officer Milazzo, to render judgment assigning seventy-five percent (75%) fault to Plaintiff and twenty-five percent (25%) fault to Officer Milazzo.

## II.    Damages.

Plaintiff also contests the trial court's award of general damages. In reviewing an award of general damages, the court of appeal must determine whether the trier of fact has abused its much discretion in making the award. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn*, 623 So.2d at 1261. Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

Plaintiff was transported from the accident scene to Lafayette General Medical Center. As a result of the accident, Plaintiff sustained a complex fracture of his right fibula and tibia, and required surgery. A metal rod was placed in Plaintiff's leg to help stabilize the bones. His recovery from surgery required the use of crutches and then a walking cane. Plaintiff testified he remained in constant

9

pain, even two years removed from surgery. Because he continued to experience pain, his physician recommended he undergo a second surgery to remove the metal rod. On May 23, 2012, the intermedullary metal rod previously implanted in his right leg was removed. He was released to normal activities by his doctor on June 12, 2012. On June 19, 2012, while participating in a softball game, Plaintiff's wound reopened, requiring an additional surgical procedure to irrigate, debride and close the wound. Plaintiff testified he continues to endure pain in his right leg and has been forced to severely limit his activities.

Despite being awarded the entirety of the medical damages claimed by Plaintiff, $67,072.12, the trial court chose to award only $40,000.00 in general damages.[3] The trial court gave no specific reasons for the amount of general damages awarded. It did not question Plaintiff's credibility as to the pain and life-altering consequences of the injuries he endured, nor did it question the necessity of any of the medical expenses claimed (as all were awarded to Plaintiff). We find an award of only $40,000.00 in general damages, after Plaintiff endured several surgeries and well in excess of $60,000.00 in medical expenses, constitutes an abuse of discretion.

This court in *Ford v. Bituminous Ins. Co.*, 12-1453 (La.App. 3 Cir. 6/19/13), 115 So.3d 1253, dealt with a similar situation where the award for general damages was substantially less than the award rendered for medical expenses. In that case, the plaintiff was awarded $45,000.00 in medical expenses, but only $17,000.00 in general damages. This court concluded the award for medical expenses was "wholly inconsistent" with the general damage award, and found the general damage award to be an abuse of discretion. *Id.* at 1258. We find the same result warranted in the instant case.

---

[3] In reasons which will follow, the award for medical expenses is reduced from $67,072.12 to $63,857.12 by agreement of the parties.

10

Considering the evidence presented, we find the trial court abused its discretion in the amount of general damages awarded Plaintiff. The minimum amount that was within the trial court's discretion to award was $125,000.00 in general damages. See *Aymami v. St. Tammany Parish Hosp. Service Dist. No. 1*, 13-1034 (La.App. 1 Cir. 5/7/14), 145 So.3d 439 ($100,000.00 in general damages awarded for displaced left tibia and fibula shaft fractures, which required surgical correction with rods and pins); *Couvillion v. Shelter Mut. Ins. Co.*, 95-1186 (La.App. 1 Cir. 4/4/96), 672 So.2d 277 ($150,000.00 in general damages for the injuries to his leg, which included surgery to repair fractures of the tibia and fibula). Therefore, we amend the general damage award to $125,000.00.

### III. *Medical Expenses.*

Defendants contend the evidence established the reopening of Plaintiff's knee wound was caused by Plaintiff playing softball and was not related to the accident. Thus, they argued the trial court's award of $6,098.00 for the medical expenses associated with the softball incident should be reversed.

The trial court concluded the reopening of the wound was related to the accident and in its discretion awarded those medical expenses. We find no abuse of discretion in that conclusion. While Plaintiff did reopen the wound while playing softball, he had been released a week earlier to return to normal activities. The jurisprudence has consistently provided that the duty not to injure a victim includes the risk that he may sustain injury due to his weakened condition. *Younger v. Marshall Industries*, 618 So.2d 866 (La.1993); *Butcher v. Mount Airy Ins. Co.*, 99-103 (La.App. 3 Cir. 6/2/99), 741 So.2d 745.

Defendants also contend Plaintiff failed to introduce certain medical expenses related to the treatment for the reopening of Plaintiff's knee wound. In brief, Plaintiff admits he failed to introduce the medical billing records for the emergency room visit at Lafayette General Medical Center on June 19, 2012,

which amounted to $3,215.00, and acknowledges, by agreement of the parties, that $3,215.00 in medical expenses was not properly awarded. Therefore, we amend the award of medical expenses from $67,072.12 to $63,385.12.

## IV. *Court Costs.*

Defendants contend the trial court erred in awarding $2,500.00 in court costs for the expert report of Dr. Stephen King. Defendants contend because Dr. King did not testify at trial, the trial court should not have awarded court costs for his services. We find no merit to this argument.

Dr. King was retained by Plaintiff to defend against an affirmative defense raised by defendants that they were entitled to immunity because of Plaintiff's alleged intoxication. Dr. King prepared a report at Plaintiff's behest that led to defendants' withdrawal of the affirmative defense. Because defendants withdrew their defense, Dr. King's presence at trial was no longer needed. Defendants argue that La.R.S. 13:3666(A) provides in pertinent part that "[w]itnesses called to testify in court only to an opinion founded on special study or experience in any breach of science . . . shall receive additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required." The above statute in no way prevents the trial court from awarding court costs for the preparation of Dr. King's report. It simply allows, in the trial court's discretion, for "additional compensation" to be awarded should Dr. King be required to testify in court. Thus, there was no error in this award.

### DECREE

For the foregoing reasons, the portion of the judgment allocating the percentage of fault is reversed in part, and judgment is rendered herein re-apportioning the degree of percentage of fault and the defendants' corresponding liability for damages and costs as follows: seventy-five percent (75%) to Plaintiff, Taylor Adam Burtner, and twenty-five percent (25%) to defendant, Michael

12

Anthony Milazzo. We amend the trial court's award of general damages to Plaintiff from $40,000.00 to $125,000.00. The judgment is also amended to reduce the award of medical expenses to Plaintiff from $67,072.12 to $63,385.12. In all other respects, the trial court's judgment is affirmed. The costs of this appeal are assessed one half to Plaintiff and one-half to defendants.

**REVERSED IN PART, AFFIRMED IN PART, AS AMENDED.**