# Supreme Court of Louisiana

The Opinion handed down on the **2nd day of October, 2015**, is as follows:

**BY GUIDRY, J.**:

2014-C -2279    EDDIE HOFFMAN v. 21ST CENTURY NORTH AMERICA INSURANCE COMPANY AND CAROLYN ELZY (Parish of E. Baton Rouge)

For the reasons set forth above, we hold that an attorney-negotiated medical discount or "write-off" is not a payment or benefit that falls within the ambit of the collateral source rule. Accordingly, we affirm the judgments of the lower courts. AFFIRMED

CLARK, J., concurring.

## SUPREME COURT OF LOUISIANA

## NO. 2014-C-2279

## EDDIE HOFFMAN

## VERSUS

## 21ST CENTURY NORTH AMERICA INSURANCE COMPANY AND CAROLYN ELZY

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**GUIDRY, Justice**

We are presented with a question of first impression as to whether a write-off from a medical provider, negotiated by the plaintiff's attorney, may be considered a collateral source from which the tortfeasor receives no set-off. Applying Louisiana law and the principles set forth in our Civil Code, we find that such a write-off does not fall within the scope of the collateral source rule. For the reasons set forth below, we affirm the lower courts' rulings.

**FACTS and PROCEDURAL HISTORY**

Eddie Hoffman was injured in October 2010, when his vehicle was rear-ended by a vehicle driven by Carolyn Elzy. The accident occurred at or near the intersection of Old Hammond Highway and Sharp Road in Baton Rouge, Louisiana. Mr. Hoffman filed suit against Ms. Elzy and her insurer, 21st Century North America Insurance Company ("Century"), for damages allegedly resulting from the accident.

A bench trial was conducted in September 2012 on the issue of liability and damages. At trial, the only witnesses were Mr. Hoffman and Ms. Elzy. The evidence introduced at trial consisted of Mr. Hoffman's medical records, the deposition transcript of the responding law enforcement officer, photographs of both vehicles involved, and Century's insurance policy. At the conclusion of trial, the court ruled in favor of Mr. Hoffman as to the issue of liability. It found Ms. Elzy one-hundred percent (100%) at fault for the accident. The trial court awarded Mr. Hoffman $4,500.00 in general damages and $2,478.00 for special medical expenses for a total award of $6,978.00.

Mr. Hoffman appealed the verdict alleging *inter alia* that the award for special damages was erroneous. With regard to special damages, Mr. Hoffman asserted the trial court erred in awarding only $2,478.00 for past medical expenses even though Mr. Hoffman had presented evidence of $4,528.00 in past medical expenses. The appellate court affirmed the verdict of the trial court in all respects. On rehearing, the appellate court affirmed its previous decision, reasoning the trial court had been presented with two conflicting medical bills and its choice between them was not manifestly erroneous.

At issue before this court, therefore, is the award for past medical expenses of $2,478.00, even though Mr. Hoffman submitted bills totaling $4,528.00. Specifically, Mr. Hoffman argues the requested medical expenses included charges for two MRIs, each for $1,500.00 (a total of $3,000.00). At trial, Mr. Hoffman introduced a medical statement for $3,000.00 from the imaging center. However, Mr. Hoffman was awarded a total of $950.00 ($475.00 for each MRI) based upon a medical statement from the imaging center introduced by the defendant that showed charges totaling $3,000.00, $950.00 in payments from the attorney, and a

bill "ajust [sic]" in the amount of $2050.00. The itemized portion of the statement indicated an "ATT W/O" of $1025.00 for each MRI.  The trial court noted that plaintiff's attorney had "an arrangement" with the medical provider.  Mr. Hoffman contends, under the collateral source rule, he is entitled to the total billed amount, including the portion of the bill that was "adjusted," or "written-off," and his recovery is not limited to merely the portion actually paid. We granted certiorari to determine the *res nova* issue of whether the collateral source rule applies to the "written-off" portion of a medical bill when the plaintiff's attorney negotiated the discount.

**LAW**

Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Louisiana Dep't of Transp. & Dev. v. Kansas City S. Ry. Co.,* 02-2349 p. 6 (La. 5/20/03), 846 So.2d 734, 739.  Under this doctrine, any payments received by the plaintiff from an independent source are not deducted from the award the injured party would otherwise receive from the wrongdoer. *Id.*  In short, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits.  *Bozeman v. State*, 03-1016 p. 9 (La. 7/2/04), 879 So.2d 692, 698.

The collateral source rule can be traced back to its common law roots. *The Propeller Monticello v. Mollison*, 58 U.S. (17 How.) 152, 15 L.Ed. 68 (1854). Two ships (the *Propeller Monticello* and *Northwestern*) were involved in a wreck, causing the *Northwestern* to sink. The *Northwestern*, however, was insured and the insurance paid for the loss of the ship and its cargo.  The Supreme Court was presented with the issue of whether the owner of the other ship was released from

liability because of the insurance payment. The court held the "contract with the insurer is in the nature of a wager between third parties, with which the trespasser has no concern. The insurer does not stand in the relation of a joint trespasser, so that satisfaction accepted from him shall be a release of others." *Id.*

Even though originating as a common law doctrine, the collateral source rule has been recognized under the jurisprudence of this state. *See Bozeman*, pp. 8-11, 879 So.2d at 697-99. Though many other states have enacted legislation governing the application of the collateral source rule within those jurisdictions, the rule has not been altered statutorily in Louisiana. *Kansas City. S. Ry.*, p. 7, 846 So.2d at 739. In *Kansas City S. Ry.*, this court cited the Restatement (Second) of Torts § 920A (1979), which states:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
>
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

We have explained that the rule serves several public policy purposes. The most oft-cited reason is that the tortfeasor should not gain an advantage from outside benefits provided to the victim independently of any act of the tortfeasor. *Kansas City S. Ry.*, p. 7, 846 So.2d at 739. We have also recognized the collateral source rule promotes tort deterrence and accident prevention. *Id.* Finally, absent such a rule, the reasoning goes, victims would be dissuaded from purchasing insurance or other forms of reimbursement available to them. *Id.*

While the collateral source rule has been applied in a variety of circumstances, it most typically has been applied in tort cases involving insurance payments and other benefits. *Bozeman*, 03-1016, p. 9, 879 So.2d at 698. As we explained in *Bellard v. American Cent. Ins. Co*, 07-1335, p. 19, 980 So.2d 654,

4

668, the courts have struggled with the question of double recovery or windfall that might arise as a consequence of the victim's receipt of an outside payment. "Double recovery would be in the nature of exemplary or punitive damages, which are not allowable under Louisiana law unless expressly provided by statute." *Gagnard v. Baldridge*, 612 So.2d 732, 736 (La. 1993).[1] The purpose of tort damages, we noted in *Bellard*, is to make the victim whole, and such a purpose is thwarted, and the law is violated, when the victim is allowed to recover the same element of damages twice. *Id.* This court in *Bozeman* resolved the question to find that no "windfall" or "double–dipping" will occur when "the injured party's patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was *additional* damage suffered by him." *Bellard*, p. 19, 980 So.2d at 668 (quoting *Bozeman*, p. 10, 879 So.2d at 699)(emphasis in original).

In *Bozeman*, the issue before us was whether the collateral source rule applies to medical expenses "written off" or contractually adjusted by healthcare providers pursuant to the federal Medicaid program, under which no consideration is provided by the recipient for the receipt of Medicaid benefits. *Bellard*, p. 20, 980 So.2d at 668-69. The *Bozeman* court held Medicaid recipients may not collect the Medicaid "write-offs" as damages, because no consideration was given for the benefit. 03-1016, p. 22, 879 So.2d at 705-06. Ultimately, "in holding the Medicaid recipient is unable to collect the Medicaid 'write-off' as damages, [in *Bozeman*] we rejected a traditional application of the collateral source rule in favor

---

[1] We explained in *Mosing v Dumas*, 02-0012, pp. 8-9 (La. 10/15/02), 830 So.2d 967, 973:

> "Exemplary damages in Louisiana reflect 'a principle that has been borrowed from the common law, and, though tacitly and sometimes expressly recognized in our decisions, it is really an exotic in our system.' *Dirmeyer v. O'Hern*, 39 La.Ann. 961, 964, 3 So. 132 (1887) (vacated on other grounds). Under Louisiana law, exemplary or other 'penalty' damages are not allowable unless expressly authorized by statute. *International Harvester Credit v. Seale*, 518 So.2d 1039, 1041 (La.1988)."

5

of a rule more narrowly tailored to better conform with the compensatory goal of tort recovery." *Id.* That goal of Louisiana tort recovery is set forth in Louisiana Civil Code article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Thus, in both *Bozeman* and *Bellard*, we emphasized a fundamental consideration for application of the collateral source rule, in addition to tort deterrence, is "whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule." *Bellard*, 07-1335, pp. 20-21, 980 So.2d at 669. *See also Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945.

**ANALYSIS**

With these principles in mind, we turn to the issue of whether a plaintiff can invoke the collateral source rule to recover for medical expense write-offs negotiated by his attorney, without having first diminished his patrimony; an issue of first impression for this court. Here, the plaintiff contends his entire medical bill totaling $3,000.00 is recoverable under the collateral source rule, rather than only the amount actually paid and accepted by the provider. We disagree, as explained below, because we find the collateral source rule does not apply to attorney-negotiated write-offs or discounts for medical expenses obtained as a product of the litigation process.

On the record before us, there is no real dispute that Mr. Hoffman's attorney negotiated the discount on the medical statement from the imaging center. Although there is no specific evidence or testimony in the record regarding the origin of the write-off, such as a contract or agreement, the notations on the medical statement speak for themselves. Furthermore, the trial court noted on two

occasions without objection that the plaintiff's attorney had an "arrangement" with certain medical providers offering discounted medical services. Additionally, there is no indication the plaintiff, Mr. Hoffman, incurred any expenses for this discount. Indeed, he testified he was unaware of the write-off or whether he had paid or given up anything in exchange for the write-off. Nevertheless, the plaintiff seeks to extend the application of the collateral source rule beyond the typical situation involving receipt of private insurance benefits to attorney-negotiated discounts of medical bills under the theory that, pursuant to a contingency fee arrangement, the plaintiff pays an attorney fee out of his recovery and this attorney fee effects a diminution in the plaintiff's patrimony sufficient to support application of the collateral source rule.

We decline to extend the collateral source rule to attorney-negotiated medical discounts obtained through the litigation process. We hold that such a discount is not a payment or benefit that falls within the ambit of the collateral source rule. First, allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code. The wrongdoer is responsible only for the damages he or she has caused. La. Civ. Code art. 2315. The plaintiff has suffered no diminution of his patrimony to obtain the write-off, and, therefore, the defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay. Because the evidence before the trial court was that Mr. Hoffman paid $950.00 for the MRIs, he is not entitled to recover any additional amount. Any recovery above $950.00 for the MRIs would amount to a windfall and force the defendant to compensate the plaintiff for medical expenses the plaintiff has neither incurred nor is obligated to pay.

7

Second, we reject plaintiff's argument that consideration for the benefit is given for attorney-negotiated medical discounts by virtue of the contractual obligation of the plaintiff to pay attorney fees, albeit only in the event of a recovery. This argument is based on the assumption that the payment of an attorney's fee is *additional* damage suffered by the tort victim. However, "[i]t is … well recognized in the jurisprudence of this state that as a general rule attorney fees are not allowed except when authorized by statute or contract." *Killebrew v. Abbott Laboratories*, 359 So.2d 1275, 1278 (La. 1978). Because the tortfeasor is not liable for, and the tort victim has no right to recover, attorney fees, the payment of an attorney fee is not *additional* damage to the plaintiff's patrimony so as to justify the "windfall" or "double recovery" represented by the attorney-negotiated discount.

Third, we adopt a bright-line rule that such attorney-negotiated discounts do not fall within the ambit of the collateral source rule because to do otherwise would invite a variety of evidentiary and ethical dilemmas for counsel. For example, an evidentiary hearing inquiring into the details of the attorney-client relationship to uncover a "diminution in patrimony" resulting from the attorney-negotiated medical discount might intrude upon the privilege surrounding the employment contract and communications as to fee arrangements. *See* La. Code Evid. Art. 506(B)(1). Additionally, a lawyer who negotiates a discount with a medical provider and then attempts to recover the undiscounted full "cost" from the defendant might run afoul of Rule 4.1 of the Rules of Professional Conduct, entitled "Truthfulness in Statements to Others," which provides in Subsection (a) that a lawyer in the course of representing a client shall not knowingly make a false statement of material fact to a third person.

While state courts differ in their interpretation of when the collateral source rule applies, and many legislatures have adopted rules governing the application of the doctrine, we have not discovered, nor have the parties pointed to, any other jurisprudence that has directly addressed the issue of whether attorney-negotiated "write-offs" are recoverable under the collateral source rule. However, at least one court has thoroughly considered whether the collateral source rule applies to discounted medical bills and has concluded that it does not. In *Howell v. Hamilton Meats & Provisions, Inc.,* 52 Cal.4th 541, 548-49, 129 Cal.Rptr.3d 325, 257 P.3d 1130 (2011), the court held the collateral source rule should not expand the scope of economic damages to include expenses the plaintiff never incurred. There, the plaintiff's health care providers, pursuant to an agreement with her insurer, waived $94,894 of the plaintiff's $122,841 medical bill. As such, the *Howell* court explained, the plaintiff did not incur, nor was she otherwise obligated to pay, the full charges presented on the medical bill, and therefore the collateral source rule did not apply. *Id.*, 52 Cal.4th at 566, 129 Cal.Rptr.3d at 343, 257 P.3d at 1145 ("an injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial").

**CONCLUSION**

In the present case, Mr. Hoffman did not incur any additional expense in order to receive the attorney-negotiated "write-off," nor has he suffered any diminution in his patrimony. Therefore, he cannot receive the advantage of the collateral source rule. *Bozeman, supra*. Additionally, allowing the plaintiff to recover expenses he has not actually incurred himself, and for which he has no obligation to pay, is contrary to Louisiana Civil Code article 2315. Because Mr. Hoffman did not actually incur the "written-off" portion of the charges, the

collateral source rule does not apply. We thus find the appellate court did not err in determining that Mr. Hoffman was entitled to reimbursement of $950.00, the actual amount paid to and accepted by the medical provider, as opposed to the initial charged amount of $3,000.00.

**DECREE**

For the reasons set forth above, we hold that an attorney-negotiated medical discount or "write-off" is not a payment or benefit that falls within the ambit of the collateral source rule. Accordingly, we affirm the judgments of the lower courts.

**AFFIRMED**

SUPREME COURT OF LOUISIANA

NO. 2014-C-2279

EDDIE HOFFMAN

VERSUS

21ST CENTURY NORTH AMERICA INSURANCE COMPANY
AND CAROLYN ELZY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

CLARK, J., concurring

Based on the bare-bones record before us, I concur in the result.