# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 20-361 consolidated with CA 20-362


**LATOYA FONTENOT**

**VERSUS**

**UV INSURANCE RISK RETENTION**

**GROUP, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 102822
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED AS AMENDED.**

**Stephen Gary McGoffin**
**Durio, McGoffin, Stagg & Ackermann, P.C.**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Neurological Solutions of Lafayette, LLC**
    **William Brennan, M.D.**

**Bryan David Scofield**
**James T. Rivera**
**Jessica W. Marchand**
**Scofield & Rivera, LLC**
**100 E. Vermilion Street, Suite 301**
**Lafayette, LA 70501**
**(337) 235-5353**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **UV Logistics, LLC**
    **UV Insurance Risk Retention Group, Inc.**
    **2-S Trucking, LLC**
    **Larry Saltzman**

**Michael J. Remondet, Jr.**
**Michael R. Guidry**
**Jeansonne & Remondet**
**P.O Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Latoya Fontenot**

**Barton Bernard**
**1031 Camellia Blvd.**
**Lafayette, LA 70508**
**(337) 989-2278**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Latoya Fontenot**

**Jerome H. Moroux**
**Broussard & David, LLC**
**P. O. Box 3524**
**Lafayette, LA 70502-3524**
**(337) 233-2323**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Michael Robertson**

**EZELL, Judge**.

This appeal arises out of a vehicular accident between an eighteen-wheeler and a car. Latoya Fontenot and Michael Robertson filed suit for injuries they sustained when an eighteen-wheeler attempted to change lanes and hit the vehicle they were traveling in. Defendants stipulated to liability on the day of the jury trial. Trial proceeded on the issue of damages and causation. The jury awarded damages to Plaintiffs. Defendants appealed the judgment. Both Plaintiffs answered the appeal asking for an increase in some of the damage awards.

## FACTS

During the morning of January 14, 2016, Larry Saltzman was traveling in an eighteen-wheeler in the left eastbound lane of Highway 14 in Abbeville. At the same time, Latoya Fontenot was on her way to work at Abbeville General Hospital, also traveling east on Highway 14 but in the right lane. Ms. Fontenot was dating Mr. Robertson who was a passenger in the vehicle. Her two daughters were also passengers in the vehicle but are not involved in this lawsuit. Mr. Saltzman attempted to move into the right-hand lane when he felt a slight bump and moved back into the left-hand lane. He then pulled over into the middle turning lane and stopped.

Ms. Fontenot testified that she felt a strong force hit her vehicle in the back which caused her to lose control. Her head hit the steering wheel. She hit her brakes to avoid hitting the ditch. She then pulled the car over and stopped on the side of the road. Upon inspection, it was observed that the passenger side of the front bumper of the eighteen-wheeler hit the rear bumper of Ms. Fontenot's vehicle.

After the accident, Ms. Fontenot sought treatment for neck injuries, and Mr. Robertson sought treatment for neck and back injuries. Both required surgical intervention.

Latoya Fontenot's Injuries

At the time of the accident, Ms. Fontenot was thirty-three years old. Following the accident, Ms. Fontenot saw Dr. Rowdy Gautreau, a chiropractor, on January 25, 2016. Dr. Gautreau testified that Ms. Fontenot described hitting her head on the steering wheel during the accident. She complained of neck, left arm, and mid back pain. Ms. Fontenot indicated that over-the-counter medications were not working. After examination, Dr. Gautreau determined that Ms. Fontenot suffered with a sprain of her ligaments in her neck and back. It was decided that Ms. Fontenot needed twenty-one sessions of chiropractic care to reduce muscle spasms and inflammation. The treatment plan included ice and heat treatment, spinal manipulations, cervical traction, and rehabilitation to strengthen the muscles. She was also given some Bio-Freeze, a topical pain-relief gel.

On the February 17, 2016 visit with Dr. Gautreau, Ms. Fontenot reported that she was still having discomfort, especially at the end of the day. Dr. Gautreau testified that this indicated that Ms. Fontenot was getting worse with activity. Since Ms. Fontenot was not responding to treatment, Dr. Gautreau ordered an MRI. The MRI indicated problems in the neck region, so Dr. Gautreau decided to refer her to a specialist.

Ms. Fontenot saw a neurosurgeon, Dr. William Brennan, on September 8, 2016. His physical exam indicated that she had restricted neck motion in all directions. Ms. Fontenot had good motor strength, good sensation, and no straight leg raising signs. Her gait and station were normal, and she ambulated unassisted.

2

Ms. Fontenot was still experiencing persistent left upper extremity pain and shooting pain into the right trapezius. The MRI indicated problems with three levels of her cervical spine, the most significant at C6-7. This correlated to her complaints. The MRI of the lumbar spine was age appropriate. Dr. Brennan believed she would benefit from a cervical traction kit to use at home.

After trying cervical traction at home, Ms. Fontenot continued experiencing pain, so an EMG was ordered. The EMG was positive and indicated a cervical nerve root was the cause of her pain. A new MRI was ordered on April 11, 2017, which indicated no change in her condition.

Dr. Brennan performed an anterior cervical discectomy and fusion surgery on three levels on May 17, 2017. Dr. Brennan's records indicate that Ms. Fontenot had improvement after surgery. He then released her to attend pain management and referred her to Dr. Michael Haydel.

After examining Ms. Fontenot, Dr. Haydel noted that Ms. Fontenot was still having issues after surgery. He treated her with pain medication and eventually performed a cervical C6-7 epidural steroid injection. Ms. Fontenot testified that she continues to see Dr. Michael Haydel every three months for pain management.

Michael Robertson's Injuries

Mr. Robertson was thirty-one years old at the time of the accident. Mr. Robertson testified that he started feeling lower back pain two to three days after the accident. He sought treatment with Dr. Gautreau on January 22, 2016, after trying over-the-counter medications. In addition to his back pain, Mr. Robertson reported that prolonged standing caused him problems, and he had difficulty laying down at night. An exam revealed muscle spasms in the cervical region and severe muscle spasms in the lumbar region bilaterally.

Dr. Gautreau prescribed ice and heat therapy, spinal manipulation, and traction to stretch the spine and take pressure off the nerves. Rehabilitation was also prescribed to strengthen the muscles.

On February 12, 2016, Mr. Robertson reported that he was continuing to have frequent tension headaches. He reported that he returned to work but had difficulty with prolonged sitting and standing. Mr. Robertson also reported frequent loose bowels. Dr. Gautreau recommended an MRI because he was not responding to treatment. Dr. Gautreau last saw Mr. Robertson in April 2016.

Mr. Robertson saw Dr. Jason Cormier, a neurosurgeon, on April 14, 2016. After examination, Dr. Cormier indicated that Mr. Robertson may require a discectomy and fusion at L4-5 and L5-S1. Upon review of the MRI, Dr. Cormier opined that Mr. Robertson required surgery at L4-5 and L5-S1 and a cervical discectomy with total disc replacement at C5-6 and C6-7 with possible fusion. On his last visit with Dr. Cormier, Mr. Robertson informed Dr. Cormier that he saw Dr. Brennan for a second opinion, as he was skeptical about having surgery.

Dr. Brennan first saw Mr. Robertson on July 13, 2016. Mr. Robertson complained of neck pain, low back pain, and right leg pain. An EMG on July 16 revealed positive findings. Mr. Robertson next saw Dr. Brennan in September 2016 and reported that the pain intensified after helping family members move following flooding of their home in August. Dr. Brennan stated Mr. Robertson aggravated his injuries from the wreck because the pain was in the same area, and it was the same type of pain, just more intense. Since Mr. Robertson was experiencing greater discomfort in his low back and legs than his neck, Dr. Brennan decided to treat that area first.

4

Surgery proceeded on Mr. Robertson in October 2016. Dr. Brennan explained that Mr. Robertson had pain on both sides of his back, but the pain was greater on the right side. It was determined that it was best to perform surgery on the right side first. Dr. Brennan performed a hemilaminectomy, discectomy, and foraminotomy in which he drilled away the small portion of the lamina on the right side.

At the December 8, 2016 appointment with Dr. Brennan, Mr. Robertson reported he was still having pain but seeing some improvement. Mr. Robertson explained that when he stands, the pain is significantly worse. Dr. Brennan referred Mr. Robertson to Dr. Sanjiv Jindia, a pain management doctor, who first saw Mr. Robertson in March 2017. Dr. Jindia stated that back pain after surgery is common.

Mr. Robertson continued to experience pain in the lumbar region in the months following surgery. A second surgery was required, and on April 4, 2018, Dr. Brennan performed a lumbar laminectomy and fusion from L4 to S1. Dr. Brennan last saw Mr. Robertson on October 4, 2018.

Ms. Fontenot and Mr. Robertson filed suit against Mr. Saltzman; 2-S Trucking, LLC, which owned the eighteen-wheeler and was Mr. Saltzman's employer; UV Logistics, which leased the eighteen-wheeler from 2-S Trucking; and UV Insurance Risk Retention Group, Inc., the insurer of UV Logistics.

A jury trial was held on October 21-25, 2019. Prior to trial, Defendants stipulated to liability, so trial proceeded on the issues of causation and damages. At the close of Defendants' case and before closing arguments, the trial court granted both Plaintiffs' motions for directed verdict as to causation. The jury then awarded damages totaling $955,000.00 to Mr. Robertson as follows:

| | |
|---|---|
| Past medical expenses: | $245,000.00 |
| Future medical expenses: | $410,000.00 |

| Past loss wages | $100,000.00 |
| Loss of enjoyment of life: | $ 0.00 |
| Future of lost earning capacity | $100,000.00 |
| Past, present, & future physical pain and suffering | $ 50,000.00 |
| Past, present, & future mental anguish and distress | $ 50,000.00 |
| Past, present, & future loss of enjoyment of life | $ 0.00 |

The jury awarded damages totaling $532,398.41 to Ms. Fontenot as follows:

| Past medical expenses: | $132,398.41 |
| Future medical expenses | $250,000.00 |
| Past loss wages: | $ 0.00 |
| Loss of enjoyment of life: | $ 0.00 |
| Past, present, & future physical pain and suffering | $100,000.00 |
| Past, present & future mental anguish and distress | $ 50,000.00 |
| Past, present, and future loss of enjoyment of life | $ 0.00 |

Defendants filed the present appeal asserting several assignments of error. They first argue that the trial court erred in granting Plaintiffs' motion for directed verdict on the issue of causation and also erred in failing to grant a new trial due to the directed verdict error. Defendants further argue that the trial court erred in failing to grant their directed verdict on the issue of Ms. Fontenot's future medical expenses and/or, in the alternative, reducing the jury's award for such. Defendants' last two assignments of error concern Dr. William Brennan. They argue that the trial court erred in failing to reduce or grant their motion for remittitur or judgment notwithstanding the verdict concerning the medical costs billed by Dr. Brennan. They also argue that the trial court erred in excluding evidence of Dr. Brennan's bias and motive.

Both Mr. Robertson and Ms. Fontenot answered the appeal. Mr. Robertson claims that the jury award of $100,000.00 for general damages was abusively low.

Ms. Fontenot argues that the jury erred in only awarding her $250,000.00 in future medical expenses. She also claims that the jury erred in failing to award anything for loss of enjoyment of life. Ms. Fontenot further argues that jury's award of $150,000.00 for physical pain and mental anguish and distress is abusively low.

## DIRECTED VERDICT AS TO CAUSATION

Defendants argue that the trial court's decision to grant a directed verdict in favor of Plaintiffs on the issue of causation was not appropriate given the facts of this case. Defendants claim that there were many credibility issues and inconsistencies with both Mr. Robertson's and Ms. Fontenot's testimonies. They argue that these credibility issues should be determined by the jury and not resolved by directed verdict. Plaintiffs both argue that Defendants introduced no evidence to rebut medical causation that their injuries were caused by the accident.

When reviewing a directed verdict, this court must consider the evidence presented and determine whether reasonable persons could have could have reached a contrary verdict. *Maturin v. Bayou Teche Water Works, Inc.*, 20-257 (La.App. 3 Cir. 12/16/20), 310 So.3d 627, *writ denied*, 21-68 (La. 3/2/21), ___ So.3d ___. A directed verdict should only be granted when the evidence presented overwhelmingly leads to one conclusion. *Id.*

> A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. *McNeely v. Ford Motor Company, Inc.*, 98-2139 (La.App. 1st Cir. 12/28/99), 763 So.2d 659, 664, *writ denied*, 2000-0780 (La. 4/28/00), 760 So.2d 1182. A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. *Pratt v. Himel Marine, Inc.*, 2001-1832, p. 17 (La.App. 1st Cir. 6/21/02), 823 So.2d 394, 406, *writs*

7

> *denied*, 2002-2025 (La. 11/1/02), 828 So.2d 572, 2002-2128 (La. 11/1/02), 828 So.2d 571.
>
> However, if there is substantial evidence opposed to the motion, *i.e.*, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. *Pratt*, 2001-1832 at pp. 17-18, 823 So.2d at 406. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. Legal sufficiency of the evidence challenges, such as those presented by motions for directed verdicts, are reviewed on appeal *de novo*. *Hall v. Folger Coffee Company*, 2003-1734, p. 10 (La. 4/14/04), 874 So.2d 90, 99.

*Maturin*, 310 So.3d at 634 (quoting *Wright v. Bennett*, 04-1944, pp. 15-16 (La.App. 1 Cir. 9/28/05), 924 So.2d 178, 187-88).

"[T]he appellate court must determine if the record supports the granting of a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of the evidence determination (a question of law)." *Davis v. Bd of Sup'rs of Louisiana State Univ. and Agr. Mech. Coll.*, 03-2219, p. 8 (La.App. 4 Cir. 11/17/04), 887 So.2d 722, 727, *writ denied*, 04-3086 (La. 2/18/05), 896 So.2d 40.

The plaintiff bears the burden of proving a causal relationship between the injury and the accident which caused the injury. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615 (La. 2/20/95), 650 So.2d 757. The burden of proof is by a preponderance of the evidence. *Id*. The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Id*.

In order to obtain the benefit of the presumption of causation described in *Housley v. Cerise*, 579 So.2d 973 (La.1991), the plaintiff must show that (1) he was in good health prior to the accident at issue; (2) following the accident, symptoms of

the alleged injury appeared and continuously manifested themselves afterward; and (3) through evidence, whether medical, circumstantial or common knowledge, a reasonable possibility of causation between the presumption of causation and the burden of proof shifts to the defendant to prove some other particular incident could have caused the injury of which the plaintiff complains. The presumption is rebuttable upon a showing by the defendant that some other particular incident could have caused the injury in question. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557.

Defendants argue that they have established numerous inconsistencies in Plaintiffs' testimonies which cast doubt on their claims that they were injured because of the accident. Defendants claim that there was evidence of Plaintiffs' preexisting conditions as well as prior accidents.

Ms. Fontenot

Defendants argue that Ms. Fontenot denied injuring her neck in a prior automobile accident, which required a trip to the emergency room. On cross-examination, Ms. Fontenot agreed that she denied any previous accident but admitted that she was involved in an accident on March 6, 2010, six years before this accident. The pain from that accident resolved as she only had one follow-up treatment after that accident. She also agreed that she backed into a pole at O'Reilly's Auto Parts store on January 14, 2016. There is no indication that Ms. Fontenot sought treatment after that incident. Ms. Fontenot was adamant that she had no neck pain prior to the accident at issue.

Ms. Fontenot's complaints of neck pain from an accident six years before the accident in the present case do not mean that she was not in good health for the purposes of application of the *Housley* presumption. *Layssard v. State, Dept. of Pub.*

9

*Safety and Corr.*, 07-78 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511.

Defendants also take issue with Ms. Fontenot's failure to mention her neck pain when she went to see doctors after the present accident who treated her for anxiety, constipation, or irritable bowel syndrome. Ms. Fontenot explained that she did not mention her neck pain because she did not go to these health care providers seeking treatment for her neck pain. She was already receiving health care treatment from other medical providers for her neck pain.

Ms. Fontenot also admitted she went to cosmetology school after the accident and did work some. However, she soon recognized that she could not sustain this type of job as she was unable to complete a day's work.

Dr. Brennan admitted that Ms. Fontenot had some issues that pre-dated the accident. However, he testified that his treatment and surgery were all related to the January 14, 2016 automobile accident.

Defendants also argue that Ms. Fontenot's issues did not arise after the accident, but at a later date. Defendants argue that their expert in interpreting and performing EMG and NCV tests, Dr. James Domingue, testified that the EMG results indicated that the abnormalities occurred within three to four months of the March 29, 2017 EMG test. Dr. Brennan ordered the EMG test to determine what levels in Ms. Fontenot's neck would require surgery. Even though he did not review Ms. Fontenot's earlier MRI, Dr. Domingue agreed that someone with a herniated disc can get worse over time. Dr. Domingue also testified that he could point to nothing historically that could have caused the problems he noted other than the accident in January 2016.

There is no evidence that Ms. Fontenot suffered herniated discs in her neck causing left arm pain prior to this accident. Ms. Fontenot's medical issues were diagnosed shortly after the accident, and there is sufficient medical evidence that these injuries were caused by the accident.

Mr. Robertson

In his deposition, Mr. Robertson denied that he suffered any accident prior to the present vehicular accident. At trial he admitted to an incident when he went to the emergency room on November 4, 2010, for lower back pain. The pain started when he hit a bump while riding a lawnmower two weeks before he decided to go to the emergency room. Christy Lenahan, a nurse practitioner, treated Mr. Robertson in the emergency room. Ms. Lenahan diagnosed him with acute exacerbation of chronic back pain. There was no other evidence of Mr. Robertson receiving any treatment for back pain until the present accident in 2016, which was six years after the emergency room visit in 2010.

Dr. Brennan testified that he evaluated Mr. Robertson and found that emergency room visit insignificant because Mr. Robertson had no problems for six years. He opined that it was more than likely that the accident caused Mr. Robertson's injuries. Dr. Gautreau also testified that any issues six years prior to the accident were irrelevant and the symptoms he treated Mr. Robertson for were caused by the accident.

Mr. Robertson also passed a physical when he went to work for Diverse Safety and Scaffolding (DSS) in 2014. He worked for them with no back or leg pain before the accident. Defendants argue that Mr. Robertson's credibility was put at issue when he denied working after the accident but at trial was forced to admit he did

11

work a few times following the accident. Defendants claim he was untruthful because his employment involved heavy manual labor.

Mr. Robertson admitted at trial that he did work a few days after the accident. His boss, Gerard Boutte, testified that Mr. Robertson worked six times after the accident in February and March, with the last day on March 15. Dr. Gautreau testified that Mr. Robertson told him he had worked light-duty offshore for DSS. Dr. Gautreau's office notes from March 16, 2016, indicated that Mr. Robertson returned to work offshore, but had difficulty with prolonged sitting and standing. Obviously, Mr. Robertson discontinued his employment with DSS due to the difficulties he was experiencing from the accident.

Defendants assert many other inconsistencies in Mr. Robertson's testimony concerning whether he joined a health club before or after the accident, representations he made on his social security disability application, and information he gave to the economist and vocational rehabilitation experts. Mr. Robertson was questioned about these issues at trial and explained them at trial. None of the testimony or evidence surrounding these issues have anything to do with whether the accident caused Mr. Robertson's injuries.

Furthermore, as pointed out by this court in *Thibodeaux v. Ace American Ins. Co.*, 13-577 (La.App. 3 Cir. 11/27/13), 127 So.3d 132, the jury still has the opportunity to evaluate credibility in making its decision when quantifying damages. "The *Housley* presumption only addresses causation." *Id*. at 141.

After a de novo review of the evidence, we find that the trial court correctly applied the *Housley* presumption in determining the accident caused Plaintiffs' injuries and in granting directed verdict on the issue of causation. While there may have been some issues with statements made in Plaintiffs' depositions, nothing

related to the fact that both Plaintiffs were in good health before the accident, the problems they experienced arose after the accident, and there was a reasonable connection between the accident and subsequent injuries. No other explanation was offered for either of Plaintiffs' injuries by Defendants, other than trying to demonstrate Plaintiffs as incredible. Medical evidence clearly indicated they were injured as a result of the accident.

## MOTION FOR NEW TRIAL

Defendants also argue that the trial court erred in failing to grant their motion for new trial. They claim that the trial court's ruling granting a directed verdict prevented them from focusing on causation based on Plaintiffs' credibility and inconsistencies in closing arguments.

Pursuant to La.Code Civ.P. art. 1972:

A new trial shall be granted, upon contradictory motion of any party, in the following cases:

(1) When the verdict or judgment appears clearly contrary to law and the evidence.

(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

In reviewing a trial court's decision on whether to grant or deny a motion for new trial, an appellate court must determine whether the trial court abused its discretion. *Martin v. Heritage Manor S.*, 00-1023 (La. 4/3/01), 784 So.2d 627.

None of these grounds have been alleged by Defendants. Defendants' basis for new trial does not fall under one of the grounds enumerated in La.Code Civ.P. art. 1972. Defendants are alleging the exact same grounds as they did in their

13

previous assignment of error regarding the trial court's decision to grant a directed verdict as to causation. We have already found that the trial court's grant of Plaintiffs' motion for directed verdict was appropriate and likewise find no abuse of discretion in the trial court's denial of Defendants' motion for new trial.

## MS. FONTENOT'S FUTURE MEDICAL EXPENSES

Defendants claim that Ms. Fontenot's award of $250,000.00 for future medical expenses should be dismissed or significantly reduced. They argue that she failed to present evidence about the costs of such future medical expenses. Ms. Fontenot claims that she presented the future costs of her medical expenses through the testimony of Dr. Brennan; life care plan expert, Stony Landry; and economist, John Theriot. In her answer to the appeal, Ms. Fontenot asks for an increase in the award of future medical expenses to $349,918.00.

A Plaintiff must prove that "future medical expenses will more probably than not be incurred." *Menard v. Lafayette Ins. Co.*, 09-1869, p. 12 (La. 3/16/10), 31 So.3d 996, 1006. "A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probably cost." *Id.* "Importantly, future medical expenses must be established with some degree of certainty." *Id.* A court should not reject an award of future medical expenses when an exact value of such expenses is not offered if the record does establish that future medical expenses are necessary and inevitable. *Id.* The plaintiff can establish entitlement to a minimum amount of future medical expenses that reasonable persons could agree would be required through evidence of past medical expenses and other additional evidence. *Id.*

A plaintiff must establish by a preponderance of the evidence that future medical expenses will be medically necessary. *Id.* An award of future medical

14

expenses is highly speculative and cannot be calculated with mathematical certainty. *Id.* Future medical expenses awards generally turn on questions of credibility and inferences of experts and witnesses. *Id.* A jury's assessment of future medical expenses is subject great deference on review and an appellate court should rarely disturb an award on review. *Id.*

> An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: *there must be no **reasonable** factual basis for the trial court's conclusion, and the finding must be clearly wrong*. This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury's fact finding conclusion was a reasonable one.

*Id.* at 1007 (citations omitted).

A jury's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. *Id.*

As to Ms. Fontenot's future medical care, Dr. Brennan testified that he would refer to her pain management doctor as to any medications or injection therapy that she might need in the future. As to her future neurological medical care, Dr. Brennan opined that Ms. Fontenot would, on the average, require yearly visits, x-rays, and MRI's, in addition to physical therapy and psychiatric treatment. He also predicted she would need future surgery due to stress put on the adjacent levels of her spine from the surgery he already performed. However, on cross-examination it was admitted that while 30% of the people with previous surgeries might develop complications in the future, very few required future surgeries. Dr. Brennan did admit that Ms. Fontenot never received physical therapy, nor did he refer her for psychiatric treatment while he had been treating her.

Dr. Brennan testified that he met with Stony Landry, certified life care planner, about Ms. Fontenot's future care. Correspondence in Dr. Brennan's medical records from Mr. Landry to Dr. Brennan and signed by Dr. Brennan confirmed Dr. Brennan's prognosis and testimony concerning Ms. Fontenot's future care and was summarized as follows:

> One neurological examination annually for life
> One series of cervical x-rays annually for life
> One MRI scan of the cervical spine annually for life
> Eighteen sessions of physical therapy annually for life
> Pain management and evaluation and treatment
> Psychiatric or psychological evaluation (due to chronic pain)
> In 17-25 years, surgery at C3-C4 level. The surgery will require
> four office visits, two series of cervical x-rays, and post-op medication.

John Theriot, Plaintiffs' expert in economics, testified that he used Mr. Landry's report to evaluate the future value of Ms. Fontenot's future medical expenses. He determined that Ms. Fontenot would need $349,918.00 total for all the recommended care by Dr. Brennan.

This was broken down into $239,719.00 for annual care for neurological examinations. This figure included roughly $7,600.00 for x-rays, $46,000.00 for MRIs, and $152,000.00 for physical therapy.

Mr. Theriot also calculated $1,575.00 as future medical expenses for mental health treatment. Future medical expenses for surgery were calculated at $108,629.00.

Based on our review of the evidence, we cannot say that the jury award for future medical expenses was manifestly erroneous. The jury could have reasonably concluded that Ms. Fontenot will require future care, including future surgery. However, there were items of future medical expenses that the jury could have

16

concluded she would not need, like physical therapy and psychiatric treatment, since she did not initially need these treatments after the accident.

## DR. BRENNAN'S MEDICAL COSTS

Defendants argue that the trial court erred in failing to reduce the medical costs billed by Dr. Brennan and/or in not granting their motion for remittitur or judgment notwithstanding the verdict concerning those bills. Defendants claim that Dr. Brennan's agreement with a medical funding company to sell a patient's medical debt to it in return for 50% of the value of his invoice creates a 50% finance charge, amounting to prohibited interest on interest. Plaintiffs argue that Dr. Brennan's business arrangements with third parties have no bearing on their obligation to pay the full amount for services charged by Dr. Brennan.

> "A trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper. The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous." *Bertrand v. Air Logistics, Inc.*, 01-1655, p. 13 (La.App. 3 Cir. 6/19/02), 820 So.2d 1228, 1237.

*Mouhot v. Twelfth Street Baptist Church*, 06-1283, p. 3 (La.App. 3 Cir. 2/7/07), 949 So.2d 668, 670.

What Defendants are really arguing is that Dr. Brennan's billing practices amount to a benefit to Plaintiffs, which is a prohibited collateral source.

> Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Under this doctrine, any payments received by the plaintiff from an independent source are not deducted from the award the injured party would otherwise receive from the wrongdoer. In short, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits.

*Hoffman v. 21st Century North America Ins. Co.*, 14-2279, p. 3 (La. 10/2/15), 209 So.3d 702, 704 (citations omitted).

The supreme court in *Hoffman*, 209 So.3d at 706, refused "to extend the collateral source rule to attorney-negotiated medical discounts obtained through the litigation process." The supreme court explained that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code." *Id.* The supreme court recognized that a tortfeasor is responsible only for the damages he or she caused pursuant to La.Civ.Code art. 2315, and the plaintiff obtained no reduction in his or her patrimony to obtain the write-off.

However, this is not a case in which the attorney negotiated the discounted rate. It is simply a procedure that Dr. Brennan testified he utilizes to reduce the risk that he will not be paid. He further stated that he still has the right to pursue collection once the case settles. There was no evidence offered in this case that either Plaintiff will not be responsible for all medical charges owed to Dr. Brennan. We find that based on the evidence presented to the jurors, reasonable jurors could have decided that Plaintiffs were entitled to awards for all medical costs billed by Dr. Brennan.

## EVIDENCE OF DR. BRENNAN'S BIAS AND MOTIVE

Defendants' final argument on appeal is that the trial court erred in excluding evidence of the amount of money Dr. Brennan received from litigation cases. They claim that this evidence would show Dr. Brennan's bias toward his litigant patients.

Except as otherwise provided by law, all relevant evidence is admissible. La.Code Evid. art. 402. Relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more

18

or less probable than it would be without the evidence." La.Code Evid. art. 401. Whether evidence is relevant is within the broad discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663.

In support of their position, Defendants cite *Rowe v. State Farm Mut. Auto. Ins. Co.*, 95-669 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611. In *Rowe*, the plaintiffs sought to introduce evidence of the defense expert's bias as an advocate for the insurance industry. This court reversed the trial court's decision to disallow evidence of the expert witness doctor's bias.

In *Navarro v. Aries Marine Corp.*, 97-1630 (La.App. 3 Cir. 4/29/98), 713 So.2d 613, *writ denied*, 98-1446 (La. 9/4/98), 723 So.2d 958, this court explained that *Rowe* does not mean that every expert medical witness in every case will be subjected to discovery of unrelated medical records for purposes of cross examination. We further explained that the "track record" of the physician must be examined.

> The trial judge does not abuse his discretion in refusing such discovery where: (1) the patient was not referred to the physician by his attorney; (2) the physician is the patient's treating physician and not an expert retained by the opposing party; (3) the physician, and not the plaintiff, moved to quash the subpoena; (4) the trier of fact is an experienced judge and not a jury; and (5) the physician's "track record" (reported decisions) does not support overwhelming bias (i.e., while in a majority of the cases the physician testified on behalf of the claimants, he did not always testify in a manner that was beneficial to the claimant).

19 La. Civ. L. Treatise, Evidence and Proof § 11.4 (2008), n. 11.

Dr. Brennan was Plaintiffs' treating physician and not a hired expert. His "track record" indicates that he works with both plaintiff and defense firms. We find no showing of bias by Dr. Brennan, and therefore, the trial court did not abuse its

discretion in refusing to admit evidence of the amount of money Dr. Brennan receives for litigation work.

## GENERAL DAMAGES

Both Ms. Fontenot and Mr. Robertson appeal the jury's award of general damages. Ms. Fontenot argues the jury's award for past, present, and future physical pain and suffering of $100,000.00 and $50,000.00 for past, present, and future mental anguish and distress is abusively low. She further claims the jury erred in failing to make any award for loss of enjoyment of life. Mr. Robertson claims that the overall general damages award of $100,000.00 to him was abusively low. Mr. Robertson was awarded $50,000.00 for past, present, and future physical pain and suffering and $50,000.00 for past, present, and future mental anguish and distress. He also received no award for loss of enjoyment of life.

General damages are those that are fundamentally speculative in nature and cannot be fixed with mathematical certainty. *Miller v. LAMMICO*, 07-1352 (La. 1/16/08), 973 So.2d 693.

> [T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
>
> . . . . Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
>
> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. . . . [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact

could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260-61 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award with that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

## Loss of Enjoyment of Life

The jury was presented with evidence from many social media posts that both Ms. Fontenot and Mr. Robertson continued enjoying a social life after the accident. Pictures showed them going out to eat a month after the accident, going to visit family in Texas, going to a concert, going to the beach, going to several Mardi Gras events over the years, shopping at the mall, going on field trips, going to a birthday party in the park, going to an LSU game, and generally going out to eat. Both Ms. Fontenot and Mr. Robertson agreed that they participated in these activities.

Based on this evidence, we do not find the jury abused its discretion in failing to make an award for loss of enjoyment of life to either Ms. Fontenot or Mr. Robertson. The evidence indicates that both Mr. Robertson and Ms. Fontenot continued to enjoy many activities after the accident.

## Physical Pain and Suffering and Mental Anguish and Distress

"Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury." *McGee v. A C And S, Inc.*, 05-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775.

Severity and duration must be considered when determining what amount should be awarded for pain and suffering. *Young v. Marsh*, 49,496 (La.App. 2 Cir. 11/19/14), 153 So.3d 1245.

> More specifically, the nature, relative severity, and extent of bodily injuries are qualitative factors that must first be considered by the trier of fact in awarding general damages. The duration of a plaintiff's injury symptoms and the duration of treatment are quantitative factors that must also be taken into account.

*Id*. at 1252.

Ms. Fontenot

Following the accident, Ms. Fontenot had problems sleeping at night. She could not get into a comfortable position that allowed her to sleep. Long days at work caused her neck to tighten up even more. She had pain down both arms, which continued down her left arm through trial.

After suffering with neck problems for nearly a year-and-a-half after the accident, Ms. Fontenot underwent a cervical discectomy and fusion surgery on three levels. Following surgery, Ms. Fontenot continues to see Dr. Haydel every three months for pain management. Ms. Fontenot explained that she is now more cautious following surgery because she does not want her condition to worsen.

As previously explained, the jury obviously determined that Ms. Fontenot will require future medical care, including additional surgery. Considering the duration of Ms. Fontenot's injury prior to surgery, her continued pain and anxiety, and the fact that she is facing additional surgery, we find that the jury abused its discretion in its awards of pain and suffering and mental anguish.

In *Huntley v. 21st Century Premier Insurance Co.*, 16-514 (La.App. 3 Cir. 11/2/16), 204 So.3d 1085, *writ denied*, 17-148 (La. 3/13/17), 216 So.3d 803, this court affirmed a general damages award of $150,000.00 for past and future pain and

22

suffering and $100,000.00 for past and future mental and emotional anguish after the plaintiff suffered cervical and lumbar injuries in a low impact automobile accident. The plaintiff in *Huntley* also had cervical spine surgery and evidence at trial indicated she was facing future lumbar surgery.

We find it reasonable to increase the award of past, present, and future physical pain and suffering to $150,000.00. We also increase the award of past, present, and future mental anguish and distress to $100,000.00. We find that these are the lowest amounts that a fact finder could have reasonably awarded.

Mr. Robertson

Mr. Robertson began experiencing pain shortly after the accident. He attempted working but was unable to continue because of pain issues. Mr. Robertson testified that the back pain following the accident was intense and that he experienced headaches. He also began experiencing issues with bowel movements.

Mr. Brennan required two surgeries on his back to relieve the issues. He continued to suffer with pain following the second surgery, so he was referred to Dr. Jindia for pain management. Dr. Jindia noted that pain following back surgery is common. He also observed that Mr. Brennan suffered with depression and erectile dysfunction. Dr. Jindia explained that back pain and narcotic pain medications can reduce testosterone levels which contribute to erectile dysfunction. Dr. Jindia testified that Mr. Robertson will have pain for the rest of his life, which will require constant pain medication.

In addition to his back issues, Dr. Brennan also treated Mr. Robertson for cervical issues. Dr. Brennan testified that Mr. Robertson will require surgery on his neck in the future but tried to take care of the back first as the most pressing issue. Dr. Brennan explained that Mr. Robertson will require an additional two surgeries

23

on his back to treat adjacent level disease. He explained that the segments next to the fused levels now must do more work and will become a surgical problem eventually.

The jury awarded Mr. Robertson $410,000.00 for future medical care, so it obviously determined that he would require future pain management and surgery. We find that the jury abused its discretion in the awards for pain and suffering and mental anguish.

In *Collatt v. Boudreaux*, 19-103, p. 11 (La.App. 3 Cir. 11/25/19)(unpublished opinion), this court found a total award of general damages in the amount of $180,000.00 abusively low when the plaintiff "endured twenty months of cervical and lumbar pain prior to a two-level anterior cervical discectomy and fusion surgery." The plaintiff had continuous pain, requiring pain medication, in addition to suffering with TMJ issues. Evidence also indicated that the plaintiff would require two additional surgeries. This court found the lowest amount that a fact finder could have reasonably awarded was $400,000.00.

Not unlike the plaintiff in *Collatt*, Mr. Robertson faces additional surgery and suffers with daily pain in both his neck and back, requiring pain medications and treatment. He has suffered with erectile dysfunction and bowel issues. All of this has led to depression.

We find it reasonable to increase the award of past, present, and future physical pain and suffering to $250,000.00. We also increase the award of past, present, and future mental anguish and distress to $150,000.00. We find that these are the lowest amounts that a fact finder could have reasonably awarded.

For the reasons set forth in this opinion, we amend the judgment to increase the award of past, present, and future physical pain and suffering to Ms. Fontenot to

24

$150,000.00.  We also increase the award of past, present, and future mental anguish and distress to Ms. Fontenot to $100,000.00.  We also amend the judgment to increase the award of past, present, and future physical pain and suffering to Mr. Robertson to $250,000.00.  We also increase the award of past, present, and future mental anguish and distress to Mr. Robertson to $150,000.00.  In all other respects, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to Defendants.

**AFFIRMED AS AMENDED.**